**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**ELDORADO DIVISION**

| | | |
|---|---|---|
| **TRACEY HAMILTON,** *et. al.* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.  1:12-cv-01069-SOH** |
| | ) | |
| **DIVERSICARE LEASING CORP.,** | ) | |
| *et. al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Discovery and the period to opt-in having closed, Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56.  Defendants show that there is no genuine issue of material fact, and they are entitled to judgment in their favor as a matter of law, as to the following issues: (1) Defendants are not liable for hours Plaintiffs worked but willfully failed to report; (2) Defendants are not liable for any claims arising after they implemented new timekeeping systems in 2012; (3) Defendants are not liable for claims arising more than two years prior to the institution of this action, and Plaintiffs whose claims fall outside that period are due to be dismissed; (4) Defendants are not liable to Plaintiff Crystal Walters or any other Plaintiff who did not work more than 40 hours in any work week; and (5) Defendants are entitled to judgment as a matter of law on Plaintiffs' claims of unjust enrichment and promissory estoppel.  For the reasons set forth below, summary judgment should be entered in favor of Defendants on these claims.

## STATEMENT OF UNDISPUTED, MATERIAL FACTS

**A.      Plaintiffs**

The named Plaintiffs, all certified nursing assistants ("CNAs") and licensed practical nurses ("LPNs"), are former employees of Diversicare Leasing Corp. (hereinafter "DLC"), Diversicare Management Services Co. (hereinafter "DMS"), and f/k/a Advocat, Inc., (hereinafter "Defendants").   Plaintiffs claim they, and others "similarly situated" at Defendants' facilities located nationwide, were denied overtime pay when they worked at Defendants' nursing home facilities in Arkansas, in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§207 and 216(b).   They allege that a 30-minute unpaid meal break was automatically deducted from their hours worked, even when they missed the break and continued working, which resulted in them being denied overtime pay.   Some Plaintiffs also allege that they were not compensated for hours worked before or after their scheduled shifts that also resulted in their working more than 40 hours in a week without time-and-a-half compensation for the hours over 40.   (Doc. 1.)[1]   By Order (Doc. 49), this Court granted provisional certification to a class consisting of:

> [A]ll nonexempt employees of Defendants whose pay is subject to an automatic meal break deduction even when they perform compensable work during their meal breaks and who are required to work additional hours off-the-clock without compensation. These persons include, but are not limited to, secretaries, activities directors, assistant activities directors, housekeepers, custodians, registered nurses, licensed practical nurses, certified nursing assistants, restorative aides, administrative personnel, and others employed by Defendants during the three years preceding [August 12, 2013].[2]

(Doc. 50, ¶55.)  The class thus consists of current or former employees at 50 health care facilities operated by Defendants.

---

[1]  Plaintiffs were granted permission to file an Amended Complaint, in which they alleged claims of unjust enrichment and promissory estoppel in violation of unspecified state laws.  (Doc. 50.)

[2]  The limitations period was modified per the Court's Order  (Doc. 49.)

2

*Plaintiff Crystal Walters.*  Plaintiff Walters testified that she worked a weekend schedule consisting of two 16-hour shifts, or 32 hours each week, and was regularly paid for 40 hours. (Deposition of Crystal Walters at 7, (Ex. 1).)  Because of her long shifts she had 1 hour of breaks each shift.  (Id.).

**B.    Defendants.**

Defendants operate health care facilities located in Alabama, Arkansas,[3] Florida, Kentucky, Ohio, Tennessee, Texas, West Virginia, and Illinois.  The following policies and practices at those facilities are pertinent to Plaintiffs' claims.

*Meal breaks*.  With the exception of facilities located in Kentucky, where all employees have paid meal breaks, Defendants have a company-wide policy that hourly employees are entitled to, and should take, an uncompensated, 30-minute meal break during each shift.  Most employees may leave the facility for their meal break, but must clock out and back in if they choose to do so.  Some employees who work on night shift at some facilities must remain on the premises during their meal breaks.  Employees who do not leave the facility for their meal break are not required to clock in and out: thirty minutes per shift were automatically deducted from those employees' hours worked for their meal break until new time clock systems were installed in 2012.[4]

*Working "off the clock" prohibited*.  Defendants' company-wide policy explicitly prohibits employees working off-the-clock.[5]  This policy also requires both employees and

---

[3]  § 30(b)(6) deposition of Sheila Dosher ("Dosher dep.") (Ex. 2) at 9.  As of September 1, 2013, Defendant's Arkansas nursing homes were sold to a third party and are no longer owned or operated by Defendant.  (Declaration of Sheila Dosher ("Dosher dec.") (Ex. 3).)

[4]  Dosher dep. at 37–39, 41–46 (Ex. 2) and Ex. 5..  A schedule of the implementation dates is attached as Ex. 4.

[5]   2007 Employee Handbook (Ex. 5); 2009 Employee Handbook (Ex.6); 2012 Employee Handbook (Ex.7). This policy is published in the Employee Handbook, the Advocat Pay Policy,

supervisors to ensure that if an employee works during meals or beyond the normal shift, the employee must report and be compensated for that time. The "time policy" is covered during each new employee's orientation and each new employee is taught how to use the time clock and the time keeping procedures.[6] Many employees successfully follow this policy, taking time off for meal breaks or, if they do miss a meal, submitting corrected time-slips and getting paid for that time.[7] These employees have not been denied pay for missed meal breaks.

---

and posted at each facility. (Dosher dep at 48-49 (Ex. 2); Advocat pay policy (Ex 8); Poster (Ex. 9).)

[6] New employees are given a copy of the Defendants' Employee Handbook and acknowledge receipt in writing. (Signature pages (Ex. 10)). Employees also acknowledge receipt of the Advocat Pay Policy. (Signed copies of Advocat Pay Policy (Ex. 11)). *See also* Dosher dep at 48-49; Declaration of Deb Moser ("Moser dec.") (Ex. 12); Declaration of Kim Jobe ("Jobe dec.") (Ex. 13); Declaration of Cynthia Nesbitt ("Nesbitt dec.") (Ex. 14); Declaration of Debbie Williams ("Williams dec.") (Ex. 15); Declaration of Carolyn Clark ("Clark dec.") (Ex. 16.) Plaintiffs Eva Wilson, Ellen Tumey, Chavon Clegg and Tanya Boren, acknowledge that they were given copies of the Defendants' policy, and told both about the policy and how their facility's time clock operated, and more particularly, how to make changes to their time record in the event of working extra hours, working through their meal breaks, and inadvertently forgetting to punch in or out. (Exs. 10, 11; Orientation Checklists (Ex. 17).)

[7] *See, e.g.,* Declarations of Canandre Baker, CNA, Arbor Oaks; Larissa Robinson, CNA, Arbor Oaks; Jessica Norwood, CNA, Arbor Oaks; Shena Lock, LPN, Arbor Oaks; Lynda Staudacher, LPN, Ash Flat, Ark.; Doug Reeves, CNA, Ash Flat, Ark.; Donna Williams, CNA, Ash Flat; Carmen Goodman, CNA, Ash Flat; Nicole Atwell, CNA, Ash Flat; Tawanya Poteete, CNA, Ash Flat; Kara Mendoza, CNA, Conway, Ark.; Steven Robinson, CNA, Conway; Angela Fraze, CNA, Des Arc, Ark.; Linda Blue, Dietary Cook, Des Arc; Krystal Hinshaw, LPN, Des Arc; Linda McMullan, CNA/Medical Records, Des Arc; Brandon Burgess, RN, Des Arc; Amy Elam, LPN, Des Arc; Regina Hancock, CNA, Des Arc; Sonya Fisk, CNA, Des Arc; Melissa Cook, RN, Des Arc; Stephanie Hartley, CNA, Garland, Ark.; Margaret Whitaker, RN, Garland; Telesha Bennett, CNA, Garland; Emily Green, CNA, Garland; Cynthia Walker, RN, Garland; Selena Barnhill, CNA, Newport, Ark.; Courtney Jones, CNA, Newport; Mimi Alcorn, CNA, Newport; Briana Combs, CNA, Newport; Deosha White, CNA, Newport; Eric Risley, CNA, Newport; Kim Daughtry, ADON, Newport; Gloria Robinson, Dietary Cook, Newport; Heather Pierce, CNA, Newport; Winter Kendall, CNA, Newport; LaPorscha Robinson, CNA, Newport; Patricia Fricks, CNA, Ouachita Nursing Home, Camden, Ark. (Ouachita); Kristy Pannell, CNA, Ouachita; Dee Usrey, LPN, Ouachita; Sandra Harris, CNA, Ouachita; Matthew Howland, CNA, Ouachita; Kimberly Howard, CNA, Ouachita; Reneece Yarbough, CNA Supervisor, Ouachita; Mary Williams, LPN, Ouachita; Tammie McArty, CNA, Pines Nursing Home (Pines); Shirley Cox, RN, Pines; Crystal Giles, CNA, Pines; Wanda Jones, Cook, Pocahontas Healthcare & Rehabilitation (Pocahontas); Whitney Eldridge, Housekeeper, Pocahontas; Andrea Brech, LPN,

*Overtime*.  Some hourly employees were scheduled to work shifts of 40 or fewer hours per week, but sometimes they worked more than 40 hours.  Defendant paid its nonexempt (hourly) employees 1 ½ times their regular rate for all hours worked over 40.  All of Defendants' facilities paid overtime compensation routinely.  The amount of overtime compensation, as a percentage of total payroll, varied from facility to facility but overall represented a sizable percentage of total compensation paid.  (Declaration of Susan Shires ("Shires dec.") (Ex. 19).)  Most facilities paid employees "punch to punch," rather than rounding their arrival and departure times to scheduled shift start and stop times.  Id.

*Old timeclock systems*.  Prior to implementation of a new system in 2012, each facility handled the process of clocking in and out, and in particular, of reporting extra hours worked, missed meal breaks, "missed punches," and similar occurrences, in slightly different ways, in compliance with Company policy prohibiting off-the-clock work.  Although the manner in which employees advised Defendants they had worked through a meal break or beyond normal shift hours varied from facility to facility prior to 2012, all facilities required both employees and their supervisors to ensure (1) that employees take their meal breaks and work only their scheduled shift hours and (2) that if an employee misses a meal break or works beyond the regularly

Pochontas; Linda Morgan Smith, CNA and Van Driver, Pocahontas; Beverly LaShec Hurst, CNA and Van Driver, Pocahontas; Tamatha Prater, CNA, Pocahontas; Shelly Barnes, RN, Pocahontas; Bonita Carol Crosson, CNA, Pocahontas;  Michelle D. Chesser, Housekeeper/ dietary aide, Pocahontas; Theresa O'Neal, LPN, Pocahontas; Angela Ragsdell, CNA & LPN, Pocahontas; Breanna Allworth, CNA, Pocahontas; Christine Watson, LPN, Rich Mountain; Chesiole Emerson, CNA, Rich Mountain; Sherry Land, CNA, Rich Mountain; Skihera Brock, CNA, Rich Mountain; Kimberly Circle, CNA, Rich Mountain; Tammy Burkett, CNA, Rich Mountain; Melissa Cooke, CNA, Rich Mountain; Charity Sanders, CNA, Rich Mountain; Kerri Rye, CNA, Rich Mountain; Eva Mello, LPN, Rich Mountain; Katrina Clark, CNA, Rich Mountain; Crystal Farnsworth, CNA, Sheridan, Ark.; Victoria Murphy, CNA, Sheridan; Linda Baker, LPN, Sheridan; Halley Ellis, LPN, Sheridan; Susan Womack, Housekeeper, Sheridan; Susan Smith, Rehab, Sheridan; Crystal King, CNA, Sheridan; Michelle McElroy, CNA, Sheridan; LaKisha Murry, CNA, Sheridan; and Pam Watson, LPN, Sheridan. (Collectively "Employee Declarations," (Ex. 18a, 18b and 18c).)

scheduled shift, she is properly compensated for all hours worked.  This was done by having the employee notify the appropriate person, either a supervisor or payroll clerk, depending on the practice in the facility.

Prior to 2012, hourly employees would swipe a card to clock in prior to the start of their shift, and clock out at the end of their shift.  The time keeping system would record their punch in and punch out times and automatically deduct one 30-minute meal break, unless they left the facility and clocked out for their break.  Employees who worked additional hours, e.g., before or after their shifts, or worked through their meal breaks, or who forgot to punch in or out, i.e., a "missed punch," would write their information on a slip of paper and submit it to payroll or a supervisor to have their time and pay adjusted.  Some facilities required the supervisor to approve the change, and then submit the change to payroll.  At most facilities, the employee simply put the slip in a box next to the time clock.

Employees routinely completed and submitted slips requesting corrections to their time and pay.  The payroll clerks processed those corrections as a matter of course and paid the employees for hours they reported as worked.  (Exs. 12-16; Declaration of Nancy Shields ("Shields dec.") (volume of time-slips) (Ex. 20).)  In fact, on multiple occasions, named Plaintiffs Eva Wilson, Ellen Tumey, Chavon Clegg and Tanya Boren, submitted "corrected" time-slips, and their compensable time and pay were adjusted accordingly.  (Copies of time-slips for Wilson, Tumey, Clegg and Boren (Ex. 21.)  Obviously, when these Plaintiffs were reimbursed in this manner for a missed meal break, they were not denied pay for hours worked due to the automatic meal break deduction.

*New time clock system*.  Defendants' new time clock system, implemented in each of Defendants' facilities at different times during 2012, requires employees to answer several

6

prompts when they clock in and out. First, they are asked whether to use their scheduled shift as their recorded time, or their actual swipe-in and/or swipe-out times.[8] Second, they are asked whether they did or did not take their 30 minute meal break. Thus, employees are prompted on a real-time basis to record any changes to their normally scheduled work periods. (Dosher dep. at 33-34, 40; Exs. 12-16.) All existing employees, and all new hires, are taught how the new system works via a "training module." (Exs. 12-16; Slide show, "Understanding Your Timeclock" (Ex. 22).) None of the Plaintiffs who worked after the new system was implemented reported being denied pay for missed breaks or for pre- or post-shift hours worked.

## STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986); *Nat'l Bank of Commerce of El Dorado, Arkansas v. Dow Chem. Co.,* 165 F.3d 602 (8th Cir.1999).

## ARGUMENT AND AUTHORITY

**A.     Defendants Are Not Liable For Time Plaintiffs Wilfully Failed To Report**.

The FLSA imposes liability on an employer who "suffer[s] or permit[s]" an employer to work. 29 U.S.C. §203(g). But an employer is not liable if, despite the employer's policies, practices, and best efforts to ensure they are paid for all hours worked, employees work uncompensated time and fail to report those hours to the employer so they can be paid. The FLSA does not impose absolute liability: Courts routinely hold that the employee bears some degree of responsibility to let the employer know when they work. This issue arises most often

---

[8]  An employee might opt for the scheduled shift start time if she clocked in early, but used the time between the clock-in and shift start for personal activities such as drinking coffee or eating breakfast. Similarly, an employee who remained on the premises after stopping work at the end of the shift, for example while waiting to be picked up,  might opt for the shift-end time rather than the clock-out time.

when employees work remotely, or under little or no supervision, but it applies in all workplaces. An employee cannot willfully fail to report hours worked and then turn around and claim they have not been paid.

The FLSA imposes an obligation on the employer "to exercise its control and see that the work is not performed if it does not want it to be performed."   *See* 29 C.F.R. § 785.13.   The employer "cannot sit back and accept the benefits without compensating for them."   *Id.*   "[The employer's] duty arises even where the employer has not requested the overtime be performed or does not desire the employee to work, or where the employee fails to report his overtime hours." *Chao v. Gotham Registry, Inc.,* 514 F.3d 280, 288 (2d Cir.2008).   The mere promulgation of a rule against overtime work is not enough. 29 C.F.R. § 785.13.   Nor does the fact that the employee performed the work voluntarily necessarily take her claim outside of the FLSA. 29 C.F.R. § 785.11.   However, the FLSA stops short of requiring the employer to pay for work it did not know about, and had no reason to know about. *See* 29 U.S.C. § 203(g) ("'Employ' includes to suffer or permit to work."); *Reich v. Dep't Conserv. & Nat. Resources,* 28 F.3d 1076, 1082 (11th Cir.1994) ("[A]n employer's knowledge is measured in accordance with his duty ... to inquire into the conditions prevailing in his business.... [A] court need only inquire whether ... [the employer] had the opportunity through reasonable diligence to acquire knowledge." (internal quotation marks and citations omitted)); 29 C.F.R. § 785.11 ("The employer knows or has reason to believe that he is continuing to work.").

In *Kellar v. Summit Seating Inc.*, 664 F.3d 169 (7th Cir. 2011), the employee argued the employer should have known she was working uncompensated time before her scheduled shift start time because her time cards reflected early clock-ins, but the Court rejected that argument, finding that "the FLSA stops short of requiring the employer to pay for work it did not know

about, and had no reason to know about. *See* 29 U.S.C. § 203(g) ("'Employ' includes to suffer or permit to work."); *Reich,* 28 F.3d at 1082 ("[A]n employer's knowledge is measured in accordance with his duty ... to inquire into the conditions prevailing in his business.... [A] court need only inquire whether ... [the employer] had the opportunity through reasonable diligence to acquire knowledge." (internal quotation marks and citations omitted)); 29 C.F.R. § 785.11 ("The employer knows or has reason to believe that he is continuing to work."); see also *Butcher v. Delta Memorial Hosp.*, 2013 WL 1668998, at *7 (E.D.Ark.,2013) (proper test is whether the employer "knew or had reason to believe that Plaintiffs performed work for which they were not compensated.") (copy attached).

In the instant case Defendants took reasonable steps to ensure that employees were compensated for every hour worked.  They adopted and implemented compliant policies, used time clocks, and in 2012 upgraded those time clocks to include a "prompt" to remind employees to request compensation for missed breaks and to report pore- or post-shift hours worked.  Prior to this innovation they had manual procedures and policies, which many employees successfully used to request reimbursement for missed breaks and extra hours.  In short, if despite all these efforts any employee still failed to receive compensation for any hours worked, it was not due to any lack of diligence on Defendants' part.

In *White v. Baptist Memorial Health Care Corp*., 699 F.3d 869 (6th Cir. 2012), the plaintiff admitted that each time she followed her employer's procedures for being compensated for interrupted meal breaks or for payroll errors she was compensated. She also admitted that at one point she decided not to follow the hospital's procedures, and argued that the hospital violated the FLSA by not compensating her for interrupted meal breaks. She occasionally told her supervisors that she was not getting her meal breaks, but never told her supervisors that she

was not being compensated for missing her meal breaks. The Court found that there was no way the hospital could have known she was not being compensated for missing her meal breaks, and dismissed her claims.  The Court distinguished this fact pattern from ones where the employer prevented the employees from reporting overtime or was otherwise notified of the employees' unreported work.  *See, e.g., Kuebel v. Black & Decker Inc.,* 643 F.3d 352, 356–57 (2d Cir.2011) (employer did not allow the employee to report overtime); *Gotham Registry, Inc.,* 514 F.3d at 283–84, 287–91 (employer had "full knowledge" that its employees were working overtime and failed to compensate them); *Allen v. Bd. of Pub. Educ.,* 495 F.3d 1306, 1316 (11th Cir.2007) (employer prevented the employee from reporting overtime hours); *Pabst v. Okla. Gas & Elec. Co.,* 228 F.3d 1128, 1131 (10th Cir.2000) (dispute revolved around whether all scheduled "on-call" time for technicians could constitute overtime or only time when they were called into work); *Reich,* 28 F.3d at 1083–84 (employer had constructive knowledge when supervisors were "specifically instructed" to "closely monitor" hours to ensure compliance with the no overtime policy and when the employer knew that the monitoring was not being done based on a previous study); *Mumbower v. Callicott,* 526 F.2d 1183, 1188 (8th Cir.1975) (with the employer's knowledge, the employee was never relieved for a meal break and always had to eat her meal while she worked); *Brennan v. Gen. Motors Acceptance Corp.,* 482 F.2d 825, 827 (5th Cir.1973) (employer discouraged employees from reporting overtime); *Burry v. National Trailer Convoy, Inc.,* 338 F.2d 422, 425–27 (6th Cir.1964) (employer knew the employee's time sheets were inaccurate).

   This case is like *White,* in that the Plaintiffs were aware that they could (and many did) seek reimbursement for missed breaks, but later decided not to tell their supervisors about the

missed breaks. Their claim for secretly unreported hours must be dismissed because the employer had no way of knowing that they were engaged in uncompensated work.

### 1. Automatic Meal Break Deductions Are Not *Per Se* Illegal.

The auto-deduct policy, standing alone, "cannot form the basis of an alleged FLSA violation" under an improper burden-shifting theory. *Frye v. Baptist Mem'l Hosp., Inc.,* 2010 WL 3862591, at *7 (W .D. Tenn 2010), *aff'd* 495 Fed. Appx. 669, 2012 WL 3570657 (6th Cir. 2012) (copies attached). Courts have recognized that "automatic meal deduction policies are not *per se* illegal." *Wolman v. Catholic Health Sys. of Long Island, Inc.,* 2012 WL 566255, at *7 (E.D.N.Y. Feb.16, 2012), affirmed in part and reversed in part on other grounds sub nom. *Lundy v. Catholic Health Sys. of Long Island*, 711 F.3d 106 (2d Cir. 2013) (copies attached); *see also Fengler v. Crouse Health Found., Inc.,* 595 F.Supp.2d 189, 195 (N.D.N.Y.2009) ("[T]he mere existence and implementation of a policy or practice of making automatic deductions for scheduled meal breaks in and of itself does not violate the FLSA."). "It is the failure of an employer to compensate employees who work through those unpaid meal breaks, and to police and oversee hourly workers and their supervisors to ensure that when working through or during unpaid meal breaks they are compensated, that potentially runs afoul of the Act." *Fengler,* 595 F.Supp.2d at 195; see also *White*, 2011 WL 1883959, at *9 (W.D.Tenn. May 17, 2011) ("Where an employer's formal policy is to compensate employees for all time worked, courts have generally required a showing that the employer's common or uniform practice was to not follow its formal, written policy." (quotation marks omitted)) (copy attached); *affirmed*, 699 F.3d 869 (6th Cir. 2012).

    **2.**     **Requiring employees to notify management of missed meal breaks and for working more than their shift does not violate the FLSA.**

Defendants' policy directs employees to "let your supervisor know" of missed breaks or extra hours.[9]   Under the FLSA, an employer who "establishes a reasonable process for an employee to report uncompensated work time" is "not liable for non-payment if the employee fails to follow the established process." *White*, 699 F.3d at 876.  The FLSA does not require an employer to be omniscient, or impose liability when it has no reason to know that an employee is engaged in compensable work: an employee who fails to report hours worked that the employer is not necessarily aware of cannot fail to report those hours and then sue the employer for failing to pay her for the unreported hours.

"[A]n employer's failure to 'ensure' that its employees are not working during unpaid meal breaks does not make the use of an automatic meal deduction policy illegal.  Rather, it is the failure to compensate an employee who worked <u>with the employer's knowledge</u> through an unpaid meal break—whether the employee reported the additional time or not—that potentially violates the FLSA." *Wolman*, supra at *8 (emphasis added); accord, *Butcher*, 2013 WL 1668998 at 7 (liability under the FLSA does not depend on whether plaintiffs fulfilled a duty to report overtime, but whether the employer knew or had reason to believe that Plaintiffs performed work for which they were not compensated).

In *Summit Seating*, 664 F.3d at 177, the Court ruled that the employer was not bound to compensate an employee who claimed she worked between 15 and 45 minutes each day before her paid shift began because the employee could not show that the employer had actual or constructive knowledge of that work.  The employee was responsible for filling in her own time

---

[9] Two of the Plaintiffs contend that they had "no practical means of ensuring that they were paid for the automatically deducted time." Exs. 23 & 24. This is flatly contradicted by documentary evidence.

cards, and never advised management that she worked more than her scheduled hours: the Court concluded that the employer had no reason to know the employee was violating its policy against working off-the-clock and affirmed the District Court's judgment in favor of the employer.

In the instant case, Plaintiffs fail to offer any evidence that Defendants knew, or had reason to know, that they were working unreported hours: on the contrary, Defendants had every reason to believe that all hours worked were being reported. Defendants prohibited employees from working "off the clock."   At all times, Defendants had practices and procedures for employees to report hours worked beyond those that were recorded with their card swipes. Defendants regularly reimbursed employees, including several of the named Plaintiffs, when they reported missed breaks, and regularly paid overtime.  In short, Defendants had taken all steps reasonably necessary to be sure that all employees would be compensated for all hours worked.  The inexorable conclusion is that Defendants could not reasonably have known that any employee was working without getting paid, and indeed Plaintiffs present no evidence that Defendants knew otherwise.  See also *Wood v. Mid-America Management Corp.*, 192Fed.Appx. 378, 381 (6th Cir. 2006) (because employee did report some overtime,  and reported any time he was called to work through the answering service (which generated a record of the call), employer had no reason to suspect that he neglected to report other overtime hours).

The very system employed by Defendants, where employees must advise the employer of missed meal breaks to receive reimbursement, has been examined by Courts and found to comply with the FLSA.  In *Bayles v. American Medical Response of Colorado,* 937 F. Supp. 1477, 1485-86 (S.D. Colo. 1996), ambulance drivers who claimed they did not receive a meal period were required to submit "an 'extra time slip' documenting the missed meal."  *Id.* at 1485. "Management would then review the call out records [similar to the AcTrack system] to

determine whether the employee was entitled to take payment." *Id.* The court found this record-keeping system adequate for purposes of the FLSA. *Id.* at 1487. As for general overtime claims, employees who do not follow a legitimate, reasonable process for reporting their time "prevent [ ] the employer from knowing its obligation to compensate the employee[s] and thwarts the employer's ability to comply with the FLSA." *Creely v. HCR MoserCare, Inc.*, 920 F. Supp. 2d 846, 851 (N.D.Ohio, 2013); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir.1981) (affirming summary judgment for the employer since the employee turned in time sheets without overtime reflected, noting if the "employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207."); see also *Brumbelow v. Quality Mills, Inc.,* 462 F.2d 1324, 1327 (5th Cir.1972) (affirming judgment in favor of an employer in an overtime case because the employee in that case was estopped from claiming she had worked more hours than the hours she claimed in her time sheets).

### 3.    The evidence demonstrates the policy is applied lawfully and consistently.

The massive number of "corrected" time slips belies a policy to violate the policy: In this case, the payroll clerks testified their facility had a simple yet effective way for employees to note any anomalies or changes to their compensable time. (See Exs. 12 - 16.) The payroll clerks testified that someone was always available to help or answer questions. Attached to each payroll clerk's declaration is a sample "corrected' time slip for that facility. Nancy Shields, an assistant with the law firm of Wimberly, Lawson collected and copied the enormous volume of "corrected" time slips for the five facilities in question for the preceding 3 years. Ms. Shields estimated that she processed approximately fourteen thousand and twenty-eight (14,028) time

slips.  (Ex. 20.)  This large volume suggests that Defendants' policy of requiring employees to self-report missed meal breaks or extra time worked well in practice.

The massive number of "exception tickets" belies a policy to violate the policy: As a practical matter, the large number of "exception tickets" submitted by employees at the five facilities where the Plaintiffs were employed strongly suggests there is no common pattern or practice of denying compensation to employees who alert their supervisor or the payroll office when they work through a break or before or after their scheduled shift.  Susan Shires, director of payroll and taxes for Defendants, ran a report showing the total amount of overtime compensation compared to total compensation for all of the Arkansas facilities.  This chart is attached to her declaration.   (Ex. 19, depo Exhibit C.)   The dollar amount of overtime compensation paid ranked from 4% of total compensation to almost 18% annually.  Under no set of circumstances could this be considered trivial.  This is compelling evidence that Defendants do not have a 'policy or practice' of violating their own timekeeping, overtime, and pay policies.

Several Plaintiffs themselves submitted a number of "corrected" time slips, and their compensated work time was adjusted accordingly.  See Ex. 21, (examples: Eva Wilson, Bates pages 2660, 2700, 2704, 2707, 2717 related to missing punches, precise punch-in and punch-out times, and requesting incentive pay; Tanya Boren, Bates number 2926, missed lunch break; Chavon Clegg, Bates number 2643, missing punch; Ellen Tumey, Exhibit page numbers 19, 21, 22, and 26 related to missing punches, requesting incentive bonus of $2/hr).[10]   In practice, employees at Defendants' various facilities could and routinely did notify the payroll person about missed breaks or extra time.  Plaintiffs fail to demonstrate there was _any_ widespread

---

[10]   While Ms. Tumey claims that she did not know how to report a missed break, her time records indicate otherwise.  Ms. Tumey turned in a number of 'corrected' time slips. Ex. 21.

practice of refusing to reimburse employees who worked through breaks or before or after their scheduled shifts.

    **4.**    **Other Circuit and District Courts Have Found No FLSA Violation On Similar Facts**.

Many courts have had the opportunity to examine cases with facts very similar to those presented here, and in most of them the Courts have found that there is no violation of the FLSA.

In *White*, 699 F.3d at 877-878, the hospital had a system to compensate its workers for time worked during meal breaks. The plaintiff admitted when she utilized the system, she was compensated; and when she failed to use the system, she was not compensated. The Court found that without evidence the hospital prevented the plaintiff from utilizing the system to report either entirely or partially missed meal breaks, the plaintiff could not recover damages under the FLSA. Moreover, since the plaintiff bore the burden of showing that she and the opt-in plaintiffs are similarly situated, when her claim was dismissed, she could no longer represent others whom she alleged were similarly situated and the class was decertified. *White*, 699 F.3d at 877-78, citing *In re Family Dollar FLSA Litigation,* 637 F.3d 508, 519 (4th Cir.2011).

In *Camilotes v. Resurrection Health Care Corp*., 286 F.R.D. 339, 345 (N.D.Ill., 2012), the Court examined an automatic meal deduction policy in a hospital chain and found it complied fully with the FLSA: there were automatic meal break deductions, but the payroll office would override them when an employee reported a missed break.

These cases, with fact patterns very similar to those before the Court in this matter, further support the conclusion that Defendants' practices comply with the FLSA.

**B.    Defendants' 2012 Time Clock Upgrade Prevented Subsequent Violations, And All Claims Arising Subsequent To This Change Should Be Dismissed For Lack Of Evidence.**

Defendants implemented a company-wide time clock change in 2012, and since that time there is no evidence that any Plaintiff was denied pay for working through a break or working before or after scheduled shift hours.  With this new system, when employees clock out after each shift, they are first asked whether to use their scheduled shift as their recorded time, or their actual swipe-in and/or swipe-out times.  Second, they are asked whether they took their 30 minute meal break.  Thus, employees are prompted on a real-time basis to record any changes to their normally scheduled work periods.  (Dosher dep. at 33-34, 40; Exs. 12-16.)  All existing employees, and all new hires, are taught how the new system works via a "training module." (Exs. 12-16; Slide show, "Understanding Your Timeclock" (Ex. 22).)  None of the Plaintiffs who worked after the new system was implemented reported being denied pay for missed breaks or for pre- or post-shift hours worked. (Ex. 25.)  The Employees' Declarations and the one Plaintiff who worked with the new software were properly paid for their time. (Exhibits 18 & 25.) Plaintiffs have utterly failed to show there was a common practice not to compensate employees for missed meal breaks, and it is their burden to prove they were denied pay for hours worked. After the new time clock system was implemented, they just can't do it, and for that reason, any such claims should be dismissed.

**C.    All Claims Arising More Than Two Years Prior To The Filing Or Opt-In Date Are Barred By The Statute Of Limitations.**

In the instant case, there is abundant evidence that Defendants acted reasonably, and had no reason to suspect that employees would fail to follow their policies and report any missed breaks or other uncompensated time.  Because Defendants were neither reckless nor indifferent to the law, the FLSA's 2-year statute of limitation should apply.

A willful violation is one made knowingly or with reckless disregard for whether the employer's conduct was prohibited by the statute. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677 (1988). Only if the employee shows that the violation meets this standard is the FLSA's normal statute of limitations extended from two to three years. 29 U.S.C. § 255. A finding of willfulness requires behavior on the part of the employer that exceeds negligence; the employer must act knowingly or with reckless disregard of whether the contested conduct was prohibited. *See EEOC v. Cherry-Burrell, Inc.,* 35 F.3d 356, 364 (8th Cir.1994) (citing *McLaughlin ,* 486 U.S. at 133).

It is obvious in this case that Defendants did, indeed, "know that the FLSA was in the picture," and took substantial steps to ensure its policies complied with the law:

a.   The employee handbook, orientation, and training materials explicitly prohibited working "off the clock," and directed employees to let their supervisors know if they had to work through a break or outside their regularly scheduled hours;

b.   Defendants adopted and implemented procedures whereby employees who worked through breaks could advise management that they needed the time automatically deducted for a break restored, procedures which were used thousands of times;

c.   Defendants used timeclocks which allowed employees to accurately record their hours worked, including pre- and post-shift time, and regularly paid overtime; and

d.   In 2012, Defendants implemented new and improved timeclocks that prompted employees, each shift, to note whether they missed their break and/or work more than their scheduled shift and should be paid.

It is hard to imagine what additional steps Defendants could have taken to ensure their employees were properly compensated for all hours worked.

If a 2-year statute of limitations is found to apply, the following named Plaintiffs are subject to dismissal because they were not employed during the pertinent period: Tanya Boren, Chavon Clegg, Rachel Cox, Tracy Hamilton, and Eva Wilson.  For the same reasons, any opt-in Plaintiff whose claim would be covered only if a 3-year statute of limitation were applied also should be dismissed.

**D.      The Claims Of Plaintiff Crystal Walters And Any Other Plaintiff Who Did Not Work More Than 40 Hours In Any Week Should Be Dismissed.**

To prove an FLSA overtime claim, a plaintiff must prove that they worked over 40 hours in a given workweek without overtime compensation. *Lundy*, 711 F.3d at 114; 29 U.S.C. § 207(a)(1) (requiring that, "for a workweek longer than forty hours," an employee who works "in excess of" forty hours shall be compensated time and a half for the excess hours).  Plaintiff Walters cannot pass this test.  Crystal Walters testified, and payroll records confirm, that she worked only weekends at Defendants' Ouachita facility: 16 hours on Saturday and 16 hours on Sunday. ( Ex. 1.)  For her 32 hours of work she was paid 40 hours.  Even assuming she worked through every shift and had no breaks at any time, that would only add 2 hours each week to her hours worked, which does not rise to the level of overtime under the FLSA.  Because she did not work any overtime hours, she and any other employee who, counting breaks, worked fewer than 40 hours in any week are entitled to no relief and their claims should be dismissed.

**E.      Plaintiffs' Claims Of Unjust Enrichment And Promissory Estoppel Should Be Dismissed.**

A claim for promissory estoppel requires: (1) a promise, (2) detrimental reliance on that promise by plaintiff, (3) that defendant could have reasonably foreseen the action plaintiff took in reliance, and (4) injustice can be avoided only by enforcement of the promise. To establish a claim of promissory estoppel requires the consideration of individual evidence regarding

reliance.  See *Van Dyke v. Glover*, 934 S.W.2d 204, 209 (Ark.1996).  In *Sterling v. Fred's Stores of Tennessee*, 2006 WL 2547347 (W.D. Ark. 2006) (copy attached), the Court held that where the promise was not fulfilled by the plaintiff's own action or inaction, no injustice will result by not enforcing the promise. "To the extent the promise was not fulfilled, the record reflects this was due to Plaintiff's own actions or inactions." *Id*. at *4.

It is abundantly clear that in the instant case, it is the Plaintiffs' own actions that were responsible for them not getting paid for missed breaks and extra hours.  Plaintiffs were promised that if they reported a missed meal break, they would be paid: and, in fact, they were. Plaintiffs, in contrast, are suing for missed breaks they failed to report, on the misguided notion, disproved above, that Defendants were obliged to discover missed breaks that Plaintiffs concealed.  Defendants' manifest "intent" was to compensate all hours worked.  There is no false promise made and reliance induced here: rather, it is Plaintiffs who, by failing to report extra time allegedly worked, failed to secure compensation Defendants were more than ready to pay.

For a court to find unjust enrichment, a party must have received something of value to which he is not entitled and which he must restore.  *Campbell v. Asbury Auto., Inc.,* 2011 Ark. 157, 381 S.W.3d 21(Ark., 2011); *El Paso Prod. Co. v. Blanc*hard, 371 Ark. 634, 269 S.W.3d 362 (2007). There also must be some operative act, intent, or situation to make the enrichment unjust and compensable.  *Id*.  It is an equitable principle invoked to render a situation fair under the circumstances.  See *Le v. Nguyen*, 2010 Ark. App. 712, 379 S.W.3d 573 (Ark. App. 2010). There must also be some operative act, intent, or situation to make the enrichment unjust and compensable.  Id.

Here, again, it is Plaintiffs, not Defendants, who fall short.  It is Plaintiffs who failed to report the missed breaks and extra hours for which they claim compensation.  Defendants

reasonably relied on Plaintiffs to follow their policies, which guaranteed compensation for all hours worked.  Defendants have not been "unjustly enriched" by the fruits of Plaintiffs' secret labor.

## CONCLUSION

For the foregoing reasons, this Court should enter judgment in favor of Defendants as to (1) Plaintiffs' claims for hours they claim to have worked but wilfully failed to report; (2) Plaintiffs' claims arising after Defendants implemented new timekeeping systems in 2012; (3) Plaintiffs' claims arising more than two years prior to the institution of this action; (4) the claims of Plaintiff Crystal Walters or any other Plaintiff who did not work more than 40 hours in any work week; and (5) Plaintiffs' claims of unjust enrichment and promissory estoppel.

Respectfully submitted this 5th day of February, 2014.

/s/ J. Larry Stine
J. Larry Stine
Bar No. 682555
Elizabeth K. Dorminey
GA Bar No. 225935
*Counsel for Defendants*

WIMBERLY, LAWSON, STECKEL,
  SCHNEIDER & STINE, P.C.
Suite 400, Lenox Towers
3400 Peachtree Road, N.E.
Atlanta, Georgia 30326
Phone (404)365-0900
jls@wimlaw.com
bdorminy@bellsouth.net

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
ELDORADO DIVISION**

| | |
|---|---|
| **TRACEY HAMILTON,** *et. al.* | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **Case No.** 1:12-cv-01069-SOH |
| | ) |
| **DIVERSICARE LEASING CORP.,** | ) |
| *et. al.,* | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2014, I served the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** via the CM/ECF system, pursuant to LR 5.2, to all of the following attorneys of record:

John Terrell Holleman, IV
Timothy A. Steadman
Maryna O. Jackson
Susan E. Burgess
Thomas G. Buchanan, III


 _/s/ J. Larry Stine_
J. Larry Stine
Bar No. 682555
*Counsel for Defendants*

WIMBERLY, LAWSON, STECKEL
  SCHNEIDER & STINE, P.C.
Suite 400, Lenox Towers
3400 Peachtree Road, N.E.
Atlanta, Georgia 30326
jls@wimlaw.com