IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

TRACEY HAMILTON, *et. al.*                                                                 PLAINTIFFS

V.                                         Civil No. 1:12-cv-1069

DIVERSICARE LEASING CORP., *et. al.*                                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion for Decertification of a putative collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  (ECF No. 150).  Plaintiffs have responded to Defendants' Motion for Decertification.  (ECF No. 156).  Defendants have filed a replied.  (ECF No. 163).  This matter is ripe for the Court's consideration.

### BACKGROUND

The named Plaintiffs, who are all certified nursing assistants ("CNAs") and licensed practical nurses ("LPNs"), are current and former employees of healthcare facilities owned and operated by Defendants.  Defendants Diversicare Leasing Corp. ("DLC") and Diversicare Management Services Co. ("DMS") are wholly owned subsidiaries of Diversicare Healthcare Services, Inc. ("DHS"), formerly known as Advocat, Inc. (hereinafter DLC, DMS, and DHS are collectively referred to as "Diversicare").  On June 22, 2012, Plaintiffs filed this action under §§ 207, 216(b) of the FLSA on behalf of themselves and other hourly employees claiming that Diversicare denied overtime pay in violation of the FLSA.  They allege that a 30-minute unpaid meal break was automatically deducted from their hours worked, even when they worked

1

through the break. Some Plaintiffs also allege that they were not compensated for overtime hours worked before or after their scheduled shifts. The Court granted conditional class certification of a collective action under § 216(b) on August 12, 2013 (ECF No. 49). Subsequently, notice of the putative collective action was issued to potential opt-in plaintiffs, and Plaintiffs report that approximately 1,592 employees have consented to join in this lawsuit. After the opt-in period expired, Diversicare filed a Motion for Decertification.

All of the named Plaintiffs are CNAs and LPNs who worked at five of Diversicare's facilities located in Arkansas. The other hourly positions in the conditionally certified class include "ancillary" employees at Diversicare facilities, such as kitchen staff, housekeeping staff, maintenance staff, activities coordinators, social services coordinators, bookkeepers, payroll staff, van drivers, receptionists, and admissions coordinators.

During the three years at issue in this lawsuit,[1] Diversicare owned and operated healthcare facilities located in Alabama, Arkansas, Florida, Kentucky, Ohio, Tennessee, Texas, and West Virginia. All hourly employees at all of Diversicare's facilities were subject to the same employee handbook and used the same time clock system. Diversicare required most of its hourly employees to take uncompensated 30-minute meal breaks during each shift.[2] Most employees could leave the facility for their meal break, but had to clock out and back in if they chose to leave. Some employees who worked the night shift had to remain on the premises. Employees who did not leave the facility for their meal break were not required to clock in and out, but thirty minutes per shift was automatically deducted from those employees' hours worked. New time clock systems were installed in all Diversicare facilities in 2012. The new

---

[1] Pursuant to § 255(a) of the FLSA, FLSA claims have a three-year statute of limitations if there has been a willful violation of the Act. 29 U.S.C. § 255(a). Whether the Defendants violated the FLSA willingly is an issue for the merits of the case. Therefore, the Court allowed the notice issued to potential Plaintiffs to go to individuals who were employed by Diversicare during the three-year period immediately preceding the Court's ruling (ECF No. 49).
[2] In Kentucky, Diversicare's hourly employees received paid meal breaks.

time clocks require employees to answer several prompts when they clock in and out, including whether to use their scheduled shift as their recorded time or their actual swipe-in and swipe-out times. Similarly, the new time clock asked whether the employees took their 30-minute meal break. As a result of the new time clocks, employees could record any changes to their scheduled shifts.

As stated in the employee handbook, Diversicare has a company-wide policy that prohibits employees from working off-the-clock and provides a procedure for employees to follow when they do have to work off-the-clock. The employee handbook used under the old time clock system states:

> If you are requested by your supervisor to work during your meal break, you will be paid for the time worked. Review your time record when you clock out to verify that any additional time you worked during your meal period has been recorded. If it has not, see your supervisor.

(Divericare Employee Handbook – June 2009, Ex. 6, ECF No. 139-11). Similar procedures were in place for time worked before or after a shift. The time policy is covered at each new employee's orientation and each new employee is taught how to use the time clock and the time-keeping procedures. New employees are given a copy of Diversicare's Employee Handbook and acknowledge receipt in writing.

## LEGAL STANDARD

Section 216(b) of the FLSA provides that a collective action for unpaid overtime compensation may be maintained against an employer by "any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The opt-in collective action mechanism for plaintiffs in § 216(b) sets forth two requirements: (1) the plaintiffs must be "similarly situated" and (2) all party plaintiffs must give their affirmative

3

written consent to participate in the action. *Wright v. Pulaski Cnty.*, 4:09 CV 00065 SWW, 2010 WL 3328015, at *9, 2010 U.S. Dist. LEXIS 87283, at *32 (E.D. Ark. Aug. 24, 2010). "[T]he fundamental inquiry in determining whether a collective action under § 216(b) is appropriate is whether or not the plaintiffs are 'similarly situated.'" *Smith v. Heartland Auto. Servs., Inc.*, 404 F.Supp.2d 1144, 1149 (D. Minn. 2005). Section 216 does not define "similarly situated" and courts have adopted varying approaches to certify a class of similarly situated plaintiffs for purposes of § 216(b).

Courts in the Eighth Circuit approach the certification of collective actions in two stages. First, a plaintiff may seek conditional certification of a collective action, authorizing notice to potential opt-in plaintiffs. *Smith*, 404 F.Supp.2d at 1149. At the conditional certification stage, the plaintiffs' burden is not rigorous. The plaintiffs must only establish that they have a colorable basis for their claim and that the named plaintiffs are similarly situated with potential collective action members. *Douglas v. First Student, Inc.*, 888 F. Supp. 2d 929, 933 (E.D. Ark. 2012). Such a showing can be made with minimal evidence that the putative collective action members were victims of a common policy or plan that may have violated the FLSA. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001). In this action, the Court conditionally certified a collective action pursuant to the FLSA and authorized notice to potential opt-in plaintiffs. (ECF No. 49). Plaintiffs report that approximately 1,592 employees have consented to join this lawsuit.

At the second stage, now germane, named Plaintiffs must make a stronger showing to continue to proceed on a collective basis. *Wright*, 2010 WL 3328015, at *9, 2010 U.S. Dist. LEXIS 87283, at *34. The court has much more information on which to base its decision and can make a factual determination on the similarly situated question. *See Mooney v. Aramco*

*Services, Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995). A court may consider "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Bouaphakeo v. Tyson Foods, Inc.*, 2014 WL 4197378, at *2, 2014 U.S. App. LEXIS 16283, at *8 (8th Cir. Aug. 25, 2014). Plaintiffs do not need to be identically situated to proceed collectively. *See Kautsch v. Premier Commc'ns*, No. 06CV04035, 2008 WL 294271, at *1 (W.D. Mo. Jan. 31, 2008). The essential question is "whether the differences among the plaintiffs outweigh the similarities of the practices to which they were allegedly subjected." *Douglas*, 888 F. Supp. 2d at 933.

## DISCUSSION

Diversicare moves to decertify this action, asserting that the Plaintiffs are not similarly situated for purposes of a collective action under § 216(b). Specifically, Diversicare contends that Plaintiffs cannot show that (1) they were victims of a common FLSA-violating policy; (2) they are similarly situated with other class members in other job classifications; and (3) they are similarly situated with class members in other facilities in the seven states at issue. Furthermore, Diversicare alleges that damages are too individualized for a collective action. Plaintiffs maintain that collective action members, regardless of their job classification or the facility at which they worked, were subject to a uniform policy that violated the FLSA, and that procedural considerations weigh in favor of a collective action. In conducting its analysis, the Court will consider the factors relevant to the second stage of analysis. *See Thiessen*, 267 F.3d at 1103.

### A. Disparate Factual and Employment Settings

Courts consider such factors as location, job duties, supervision, and salaries in analyzing Plaintiffs factual and employment settings. *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d

870, 899 (N.D. Iowa 2008). Plaintiffs contend that the disparate factual and employment settings are immaterial because a uniform, FLSA-violating policy applied to all hourly employees without regard to job duties, location, or supervision. Diversicare argues that the named Plaintiffs fail to show that they are similarly situated with collective action members who worked at other facilities and in other job classification.

The Court finds that disparate employment settings and job classifications are material in determining whether the Plaintiffs are similarly situated in this case. While Diversicare had a uniform policy that applied to all of its hourly employees, that policy did not violate the FLSA. The Eighth Circuit has not ruled as to whether automatic meal deductions are a per se violation of the FLSA, however, courts have consistently held that an automatic meal deduction in and of itself does not violate the FLSA. *See White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 873 (6th Cir. 2012); *McClean v. Health Sys., Inc.*, 11-03037-CV-S-DGK, 2012 WL 607217, at *6 (W.D. Mo. Feb. 23, 2012); *Fengler v. Crouse Health Found., Inc.*, 595 F.Supp.2d 189, 195 (N.D. N.Y 2009); *see also* Wage and Hour Division, U.S. Dep't of Labor, Factsheet No. 53, The Health Care Industry and Hours Worked (July 2009), *available at* http://www.dol.gov/whd/regs/compliance/whdfs53.pdf (recognizing that automatic meal deduction policies comport with the FLSA). Therefore, Plaintiffs must show that Defendants have a "policy-to-violate-the-policy." *See Saleen v. Waste Mgmt., Inc.*, No. 08-4959, 2009 WL 1664451, at *4 (D. Minn. June 15, 2009).

Diversicare has a formal policy in place to compensate employees who worked through their lunch breaks and Plaintiffs have failed to show that Diversicare's common or uniform practice did not follow the written policy. Plaintiffs' case is premised on their assertion that there was a disconnect between the written policy and what happens in practice, however,

6

Plaintiffs provide no direct evidence of a de facto policy to not compensate employees for missed meal breaks or to even discourage employees from seeking compensation. The deposition testimony of the named Plaintiffs reveals that their experiences with the policy varied greatly. Some state that they did not let anyone know when they missed a meal break. Some testify that they were paid for at least some of their missed meal breaks, but not all. Many of the named Plaintiffs indicate that they only used Diversicare's procedures to report uncompensated overtime some of the time. At the second stage of the certification process, Plaintiffs must offer substantial evidence that they are, in fact, similarly situated. Plaintiffs have failed to establish that Diversicare maintains a uniform policy that violates the FLSA, or that Diversicare violates the FLSA in practice despite its written policies.

As for the job classifications, the conditionally certified class includes kitchen staff, housekeeping staff, maintenance staff, activities coordinators, social services coordinators, bookkeepers, payroll staff, van drivers, receptionists, and admissions coordinators. Apart from the consents to join the action, Plaintiffs have presented no evidence of hourly employees other than CNAs and LPNs failing to be paid for their missed meal breaks. All of the named Plaintiffs are CNAs and LPNs. Diversicare contends that CNAs and LPNs are "clinical" employees who work directly in patient care. Other hourly employees in the conditionally certified class are "ancillary," such as housekeeping, maintenance, and payroll employees. These positions typically are not so intertwined with patient care that the demands of the job would require an employee to miss his or her lunch break. Plaintiffs have not demonstrated that ancillary employees are similarly situated to the named Plaintiffs.

Similarly, Plaintiffs have offered no evidence that Diversicare fails to pay its employees for their missed lunch breaks in states other than Arkansas. The named Plaintiffs were

employees of only five facilities located in one of the eight states at issue. Thus, Plaintiffs have not demonstrated that employees in other states are similarly situated to the named Plaintiffs.

Plaintiffs' argument that the collective action members are similarly situated rests heavily on the company-wide policies regarding the automatic 30-minute meal deduction. This argument is without merit because Plaintiffs have failed to show that Diversicare's policies and practices violate the FLSA. The Plaintiffs do not offer any other evidence of similarities among the factual and employment settings of the Opt-In Plaintiffs that would support the Court finding the Plaintiffs are similarly situated. Therefore, this factor weighs in favor of decertification.

### B. Individualized Defenses

The second relevant factor in determining whether to allow the action to proceed collectively is the extent to which defenses appear to be individualized to each plaintiff. *Douglas*, 888 F. Supp. 2d at 935. In addition to its defense that the policy of automatically deducting meal breaks is compliant with the FLSA, Diversicare has defenses regarding actual liability as to individual plaintiffs. These defenses will not be uniform throughout the class.

For example, some Plaintiffs claim they did not know about Diversicare's policy of working off the clock. Diversicare asserts that it will show that the employee signed acknowledgements receiving employment policies that stated this rule. Diversicare also contends that some of the putative class members are registered nurses and activities directors. Plaintiffs in these job classifications may be exempt from overtime compensation as employees who work in an administrative or supervisory capacity.[3] Other issues raised by the defenses asserted in this case include whether individual plaintiffs worked missed meal breaks without compensation, whether individual supervisors were aware that individual plaintiffs missed meal

---

[3] *See* 29 U.S.C. § 213(a).

breaks without compensation, and whether individual plaintiffs followed the policies for receiving overtime compensation.

Plaintiffs have failed to establish a common, FLSA-violating policy that applied to all putative class members. Without a common thread of FLSA violations, the asserted defenses of Diversicare will require a highly individualized analysis. For the foregoing reasons, this factor also weighs in favor of decertification.

### C. Fairness and Procedural Considerations

When ruling upon a decertification motion, courts should consider whether proceeding as a collective action "comports with the purposes of the FLSA by balancing the benefits of a reduction in the cost to individual plaintiffs, and any increased judicial utility that may result from the resolution of many claims in one proceeding, with the cost of any potential detriment to the defendant and the potential for judicial inefficiency that could stem from collective treatment." *Nerland v. Caribou Coffee Co.*, 564 F. Supp. 2d 1010, 1025 (D. Minn. 2007) (citing *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (ADEA claim)). Coherent management of the trial and avoidance of jury confusion are essential considerations. *Douglas*, 888 F. Supp. 2d at 936.

Plaintiffs have failed to show that the named Plaintiffs are similarly situated with the putative class members who have consented to join this action. There is no common, FLSA-violating policy that overcomes the otherwise disparate factual and employment settings of the Opt-In Plaintiffs. The highly individualized defenses would encumber a collective action. It would be very difficult to adjudicate the claims of 1,592 Opt-In Plaintiffs properly. Therefore, the judicial inefficiency that would stem from a collective action outweighs any reduction in the cost to potential plaintiffs. Thus, this factor also dictates in favor of decertification.

CONCLUSION

For the reasons explained above, Defendants' Motion for Decertification (ECF No. 150) is hereby **GRANTED**. The claims of all Opt-In Plaintiffs are hereby **DISMISSED WITHOUT PREJUDICE**.

The Parties filed motions for summary judgment addressing both Named and Opt-In Plaintiffs. Because the Court has now dismissed the Opt-In Plaintiffs, the Court finds that updated motions for summary judgment are necessary. Accordingly, the pending Motions for Summary Judgment (ECF Nos. 134 and 136) are hereby **DENIED WITHOUT PREJUDICE**.[4]

**IT IS SO ORDERED**, this 1st day of October, 2014.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge

---

[4] Because the Motions for Summary Judgment have been denied without prejudice and the Defendants' Motion for Decertification has been granted, Plaintiffs' Motion to Stay (ECF No. 164) is hereby denied as moot.